# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
August 2, 2010

No. 09-50313

Lyle W. Cayce
Clerk

UTEX COMMUNICATIONS CORPORATION,

Plaintiff-Appellant,

v.

PUBLIC UTILITY COMMISSION OF TEXAS; PAUL HUDSON, IN HIS
OFFICIAL CAPACITY AS CHAIRMAN OF THE PUBLIC UTILITY
COMMISSION OF TEXAS; JULIE CARUTHERS PARSLEY, IN HER
OFFICIAL CAPACITY AS COMMISSIONER OF THE PUBLIC UTILITY
COMMISSION OF TEXAS; BARRY SMITHERMAN, IN HIS OFFICIAL
CAPACITY AS COMMISSION OF THE PUBLIC UTILITY COMMISSION
OF TEXAS; AND SOUTHWESTERN BELL TELEPHONE, L.P., D/B/A
AT&T TEXAS F/K/A SBC TEXAS,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
A-06-CA-567-LY

Before DAVIS, WIENER and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.[*]

Plaintiff UTEX Communications Corporation ("UTEX") appeals the
judgment of the district court which affirmed the order of the Public Utility

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-50313

Commission of Texas ("PUCT") declining to consider proposed amendments to the contract controlling the relationship between UTEX and defendant Southwestern Bell Telephone Company, d/b/a AT&T Texas, because the requested amendments were beyond the scope of its proceedings. Because PUCT's order was not arbitrary or capricious, we AFFIRM.

I.

This case arises under the Telecommunications Act of 1996 (the "Act") which amended the Communications Act of 1934 to deregulate telephone services that had previously been provided by a single company within each local area. The Act required incumbent local exchange carriers ("ILECs" or "Incumbents"), like AT&T Texas, which had previously held a monopoly, to enter into interconnection agreements ("ICAs" or "Agreements") with competitive local exchange carriers ("CLECs" or "Local Carriers") like plaintiff UTEX. Each ICA sets the terms and conditions on which an Incumbent will provide a Local Carrier with interconnection to the Incumbent's network and use of individual elements of the incumbent's network on an unbundled basis. The individual elements are called unbundled network elements ("UNEs" or "Elements"). The Act gives the FCC the discretion to determine which Elements will be unbundled.

Local Carriers can enter into Agreements with Incumbents in two ways. First, a Local Carrier and an Incumbent can attempt to negotiate an Agreement, followed by arbitration of any open issues before the state utility commission. The final Agreement is subject to the approval by the state utility commission and review by the federal district court. Alternatively, under 47 U.S.C. § 252(i), a Local Carrier may adopt an existing Agreement between an Incumbent and another Local Carrier which has previously been approved by the state utility commission. UTEX chose the second option by adopting an Agreement that

AT&T Texas had negotiated with another Local Carrier owned by the principals of UTEX in 2000 (the "UTEX/AT&T Texas 2000 ICA").

In 2000, when the UTEX / AT&T Texas 2000 ICA was approved, the FCC's Local Competition Order was in effect, identifying certain Elements that Incumbents were required to make available to Local Carriers. The validity of the FCC's rules in the Local Competition Order was litigated over several years thereafter and resulted in several modifications, including the 2003 Triennial Review Order ("TRO") and the 2005 Triennial Review Remand Order ("TRRO"). The TRO and TRRO changed the Elements that the Incumbents were required to unbundle and provide to Local Carriers.

Most ICAs, including the UTEX/AT&T Texas 2000 ICA, include a "change of law" provision that allows for the Agreement to be amended to reflect changes in the law which affect the terms of the Agreement as negotiated and approved. In 2004, AT&T Texas petitioned PUCT to conform Agreements with twenty-eight Local Carriers, including UTEX, to the current law pursuant to the change of law provisions in the Agreements. The petition came before PUCT in Docket 30459. The stated purpose of the filing was to change the terms of all non-standard form Agreements, like UTEX's, to conform to the FCC's orders in TRO and TRRO. UTEX argued that the scope of Docket 30459 should include negotiation of pricing and other terms to be added to its Agreement to allow it to access the Elements available after the change in law. AT&T Texas argued and PUCT agreed that Docket 30459 was limited in scope to conform Elements in the parties' Agreements to the new FCC rules and did not include items unaffected by TRO and TRRO. UTEX appealed to the district court.

The district court determined that the "missing provisions UTEX requested to have added were available at the time the 2000 Agreement was negotiated and finalized" and that there has been "no change in the FCC rules that would allow UTEX to seek a modification of the 2000 Agreement through

the change-of-law provision" in its Agreement to obtain the terms suggested by UTEX. Accordingly, the district court concluded that PUCT "did not act arbitrarily or capriciously when it determined that UTEX's request to add missing provisions was outside the scope of the proceedings initiated by AT&T under the change-of-law provision of the 2000 ICA." UTEX appeals the district court's order.

Since July 31, 2002, another Docket affecting these parties has been pending at PUCT. Docket 26381 concerns an arbitration of a new Agreement being negotiated between UTEX and AT&T Texas to replace the existing UTEX/AT&T Texas 2000 ICA, which is the Agreement being amended in the change of law proceeding in Docket 30459. After UTEX informed PUCT arbitrators in docket 26381 that all the issues involved Voice Over Internet Protocols (VoIP), PUCT abated the arbitration based on its understanding that the FCC needed to first establish standards for this feature. UTEX filed a petition with the FCC asking the FCC to preempt PUCT's jurisdiction over Docket 26381 and negotiate the agreement itself. The FCC denied UTEX's petition, stating that PUCT should arbitrate based on existing law regarding VoIP. PUCT has initiated rulemaking to establish Texas's VoIP standards. PUCT has stated that once that rulemaking is complete, it will complete the arbitration of a replacement Agreement between UTEX and AT&T Texas in Docket 26381.

After oral argument was heard in this case, this court was informed that UTEX filed for Chapter 11 bankruptcy relief in the Western District of Texas, triggering the automatic stay of this case under 11 U.S.C. §362. The court was informed by letter dated May 14, 2010, that the stay was lifted by order of the Bankruptcy Court dated April 23, 2010. Accordingly, we proceed with this appeal.

No. 09-50313

## II.

This court considers *de novo* the legal issue of whether the agency's actions are in compliance with the Act and reviews all other decisions under an arbitrary and capricious standard. *Sw. Bell Tel. Co. v. PUCT*, 208 F.3d 475, 482 (5th Cir. 2000).

## III.

At issue in this case is the scope of Docket 30459. PUCT has broad discretion to control what matters it will consider in a particular docket. *Reliant Energy, Inc. v. PUC*, 153 S.W.3d 174, 194 (Tex. App. Austin 2004)(PUCT has authority to consolidate issues from different dockets in a single generic proceeding); *El Paso v. Public Util. Comm'n*, 839 S.W.2d 895, 926 (Tex. App. Austin 1992), *rev'd in part on other grounds*, 883 S.W.2d 179 (Tex. 1994)(PUCT has power to sever issues as "[a]ny other result would defeat the legislative intent in delegating duties to the Commission for more efficient administration").

UTEX wants access to two specific Elements, DS3 Loops and DSL-capable Loops. These Elements are on the current FCC list of Elements that Incumbents must make available. They were also available under FCC rules in place at the time the UTEX/AT&T Texas 2000 ICA was adopted. However, according to UTEX, AT&T Texas will not allow UTEX to access them because AT&T Texas claims that their current Agreement (UTEX/AT&T Texas 2000 ICA) does not have specific prices, terms for ordering, or provisioning or certain cross-connects that are necessary to make the loops function.

UTEX argues that the scope of Docket 30459 should include the negotiation of terms to allow it to access DS3 Loops and DSL-capable loops that are on the current list of available Elements. It bolsters its argument with the fact that Docket 26381, the attempt to negotiate a new Agreement with AT&T Texas, has been abated by the arbitrators, leaving it with no way to resolve this

issue.  AT&T Texas argued and PUCT agreed that Docket 30459 was limited in scope to conform Elements in the parties' Agreement to the new FCC rules.  The district court agreed.  We also agree.

UTEX contends that AT&T Texas refuses to make DS3 and DSL loops available because of deficiencies in the UTEX/AT&T Texas 2000 ICA.  It is clear to us, however, that any deficiencies in the Agreement in this respect were not created by the change in law resulting from TRO and TRRO.  UTEX states in its brief that "AT&T refuses to provide two specific UNEs (DS3 Loops and DSL-capable Loops) to UTEX under the current agreement because AT&T insists the current terms do not have specific prices, terms for ordering, or provisioning or certain 'cross-connects' that are necessary to make the loops function.  UTEX has been trying to secure these 'missing' terms . . . for over seven years."  Accordingly, the problems with the missing terms and the Agreement between UTEX and AT&T Texas predate both the TRO and TRRO, as well as AT&T Texas's filing of this change of law proceeding.

PUCT's ruling states that "UTEX admits that the TRO and TRRO do not expressly require changes to existing manual or mechanized pre-ordering and ordering processes, but explains that its concern is that there are no existing processes for certain UNEs (or connections to or between them) that are specifically retained in those orders."  PUCT correctly recognized that the TRO and TRRO did not affect or create this deficiency in UTEX's Agreement with AT&T Texas.  The Elements UTEX wants access to were available both at the time the Agreement was adopted and after the issuance of the TRO and TRRO.  The lack of "specific prices, terms for ordering, or provisioning or certain 'cross-connects' that are necessary to make the loops function" in the Agreement was not a problem created by those orders.  In other words, UTEX's prospects of obtaining functioning DS3 and DSL loops was no better or worse after TRO and TRRO.    Because  PUCT  considered  docket  30459  solely  dedicated  to

No. 09-50313

implementing amendments to the contracts required by the change in law following the issuance of TRO and TRRO, it concluded that UTEX's request was beyond the scope of the proceeding.

PUCT's decision to limit the scope of 30459  was particularly appropriate because that proceeding involved not only AT&T Texas and UTEX, but also twenty-seven other CLEC's who had the same or similar Agreements with AT&T Texas.   PUCT was entitled to conclude that introduction of individual contract issues into this proceeding would be unwieldy.

In addition, despite UTEX's arguments to the contrary, nothing in the Act, FCC rules or TRO or TRRO in particular, requires PUCT to consider its ancillary contract dispute issues in this change of law proceeding  or requires PUCT or the district court to review the full Agreement, as amended, for compliance with the Act.

In sum, we agree with PUCT that "[t]hese questions regarding Element availability have no relationship to the TRO and TRRO and were not impacted by those FCC decisions.  In fact, they appear to be issues predating those Orders altogether."  In other words, the terms UTEX is seeking to add to its Agreement with AT&T Texas are issues independent of the issues created by the changes in the law caused by TRO and TRRO and instead involve a separate contract dispute with AT&T Texas.  PUCT's decision that those claims should be brought in a separate proceeding or addressed in the new agreement under Docket 26381 was not arbitrary or capricious.

UTEX also takes the position that PUCT erred by sending UTEX to Docket 26381 to resolve issues related to the full implementation of TRO and TRRO into its Agreement with AT&T Texas and by then abating that proceeding, leaving it unable to function.  The district court dismissed UTEX's claims related to Docket 26381 and UTEX admits that it did not appeal that dismissal.

7

No. 09-50313

Accordingly, this court has no jurisdictional basis to review the abatement of the proceeding in Docket 26381.

## IV.

For the reasons set forth above, we affirm the judgment of the district court. While UTEX's access to the Elements under its Agreement with AT&T Texas continues to be subject to its contract dispute, those issues did not arise as a result of changes implemented by TRO or TRRO. Accordingly, this change of law proceeding does not encompass that dispute and PUCT's decision to limit the scope of Docket 30456 accordingly was not arbitrary or capricious.

AFFIRMED.